# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOSEPH KONIKOV; CHANA KONIKOV,**

      **Plaintiffs,**

**-vs-**                              **Case No.  6:06-cv-818-Orl-28JGG**

**ORANGE COUNTY, FLORIDA; EDWARD
CANEDA; GEORGE LaPORTE;
MICHAEL SCOTT; ROBERT SPIVEY;
MELVIN PITTMAN,**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE OR MOTION FOR SUMMARY JUDGMENT (Doc. No. 14)** |
| **FILED:** | **August 18, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

## I.    INTRODUCTION

      Plaintiffs Joseph and Chana Konikov sue Orange County, Florida ("the County") and five

individuals who acted as agents/employees of the County, Edward Caneda, George LaPorte, Michael

Scott, Robert Spivey, and Melvin Pittman (collectively "the County employees"). Plaintiffs'

Amended Complaint sets forth eight causes of action arising from Defendants' efforts to enforce the

Orange County Code regarding Plaintiffs' use of their residence for religious activities.  Defendants contend that the instant law suit ("Konikov II") should be dismissed because Plaintiffs' claims were adjudicated in *Joseph Konikov v. Orange County, Florida, et al.*, Case No. 6:02-cv-376-ORL-28-JGG ("Konikov I"), and their claims are barred by *res judicata* and collateral estoppel.  Defendants also argue that there no longer is a live case or controversy and the action is moot.

As to Plaintiffs' claims against the County employees, Defendants also argue that the County employees have qualified immunity for actions allegedly taken in their individual capacities, and that acts taken in their official capacity are redundant of the claims against the County.  Finally, Defendants argue that Plaintiffs' state law tort claims for civil conspiracy and negligent supervision or retention fail to state a claim.

## II.     STANDARD OF REVIEW

### A.      Motion to Dismiss

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45 - 46 (1957); *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (threshold is "exceedingly low").  In determining whether to dismiss a case, the Court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff.  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).  The Court does not generally accept conclusory allegations as true.  *See S. Fla. Water Mgmt. Dist. v.*

*Montalvo*, 84 F.3d 402, 408 n.10; *accord, Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100

(5th Cir. 1974).  Where the parties present matters outside the pleading to support a motion to dismiss

for failure to state a claim and the Court does not exclude them, the Court treats the motion to dismiss

as a motion for summary judgment.  Fed. R. Civ. P. 12 (b).

 **B.** **Summary Judgment**

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on

file, that there are no genuine issues of material fact that should be decided at trial.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593 - 94 (11th Cir.

1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  A moving party discharges its

burden on a motion for summary judgment by showing the Court that there is an absence of evidence

to support the non-moving party's case.  *Celotex*, 477 U.S. at 325.  Rule 56 permits the moving party

to discharge its burden with or without supporting affidavits, and to move for summary judgment on

the case as a whole or on any claim.  *Id.*  When a moving party has discharged its burden, the

non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions,

answers to interrogatories, and admissions on file," designate specific facts showing that there is a

genuine issue for trial.  *Id.* at 324.

 In determining whether the moving party has met its burden of establishing that there is no

genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court

must draw inferences from the evidence in the light most favorable to the non-movant, and resolve

all reasonable doubts in that party's favor. *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d

1328, 1330 (11th Cir. 1988).  The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of
> possible inferences from the facts established by weighing each against the abstract
> standard of reasonableness."  The opposing party's inferences need not be more
> probable than those inferences in favor of the movant to create a factual dispute, so
> long as they reasonably may be drawn from the facts.  When more than one inference
> reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995), *quoting WSB-TV v. Lee*, 842 F.2d

1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference

from the facts, and if that inference introduces a genuine issue of material fact, then the court should

not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*,

835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law."  *Id.* at 251-52.  On a summary judgment motion the Court may not weigh the

credibility of the parties.  *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).  If the

determination of the case rests on which competing version of the facts or events is true, the case

should be presented to the trier of fact.  *Id.*

## III.   ANALYSIS

### A.   DISMISSAL OF CLAIMS AGAINST ORANGE COUNTY AND INDIVIDUAL COUNTY EMPLOYEES ACTING OFFICIALLY [COUNTS I - VI and VIII]

Defendants argue that the doctrine of *res judicata* bars this action in its entirety. Alternately, Defendants argue that the doctrine of collateral estoppel bars Counts I through VI.

### 1.   Res Judicata Based on *Konikov I*

*Res judicata* and collateral estoppel are separate and distinct doctrines. *Res judicata* refers to claim preclusion, whereas collateral estoppel refers to issue preclusion. *Christo v. Padgett,* 223 F.3d 1324 (11th Cir. 2000); *see* 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D, § 4402 (1981). *Res judicata* attaches when the same cause of action is litigated between the same parties in consecutive cases. *Christo*, 223 F.3d at 1338 n.46. Under the rules of *res judicata*, when a plaintiff obtains a judgment, the effect of the judgment extends to the litigation of all issues relevant to the same claim between the same parties. *Id.* The four elements of *res judicata* are: (1) "a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

Whether a litigant asserts the same cause of action in two proceedings depends on whether the "primary right and primary duty" are the same in both cases. *Pleming v. Universal-Rundle Corp*., 142 F.3d 1354, 1356 (11th Cir. 1998). *Res judicata* acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims that could have been asserted based on the "same operative nucleus of fact." *Id.  See also, Hart v. Yamaha-Parts Distrib., Inc.,* 787

F.2d 1468, 1470-71 (11th Cir. 1986) (claim preclusion cannot be avoided by asserting a different theory in the subsequent case when the two cases were based on the same motorcycle accident).

The court, therefore, must examine the factual issues to be resolved in the second suit and compare them with the facts asserted in the first case. *Pleming*, 142 F.3d at 1357. For purposes of determining what issues were determined in the first case, the complaint frames the scope of the litigation. *Id*. New claims acquired during the pendency of the first litigation are not determined unless the complaint is amended or the new claim is made part of the action through a pretrial order pursuant to Fed. R. Civ. P. 16(e). 142 F.3d at 1358. This is true even if the plaintiff uses the facts surrounding the subsequent claim in briefs supporting his claims in the first litigation. *Id*. at 1358-59.

### a.   Whether Konikov II Involves the Same Parties as Konikov I

Clearly, the County is the same party to both actions. A question arises, however, as to whether the plaintiffs and individual defendants are the same. In *Konikov I*, only Joseph Konikov was named as a plaintiff. In *Konikov II*, Joseph's wife Chana Konikov joins as a plaintiff. Defendants argue that the interests of the Konikovs are closely aligned, and that Joseph Konikov was the "virtual representative" of his wife in *Konikov I* such that she is bound by the results of *Konikov I*.

Plaintiffs do not dispute Defendants' arguments on this point. Docket 20 at 6-7. The Court finds that Joseph and Chana Konikov's interests in *Konikov I* were very closely aligned, and that Chana's interests were adequately represented by Joseph. As a matter of law, Joseph and Chana Konikov were in privity with each other, and are considered "the same person" for purposes of *res judicata*. *See, Cotton v. Fed. Land Bank*, 676 F.2d 1368, 1370-71 (11th Cir. 1982); *Jaffree v. Wallace*, 837 F.2d 1461, 1467-68 (11th Cir. 1988).

In *Konikov I*, Joseph Konikov sued individual County employees (members of Orange County's Code Enforcement Board) who differ from those he now sues in *Konikov II* (code enforcement officers or investigators).  Defendants argue that Plaintiffs may maintain their suit only against the County, and that suits against public employees acting in their official capacity are properly considered suits against the governmental agency.  Plaintiffs do not contest this argument, but instead argue that Plaintiffs also are suing the County employees in their individual capacities. Docket 20 at 6-7.  In other words, Joseph and Chana Konikov demand that individual County employees pay them monetary damages from their own personal bank accounts or assets.

To the extent the individual employees are named in their official capacity, the County is correct that the suit is against the government agency that the employee represents.  *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1210 n. 3 (11th Cir.1993).  The County employees are sued in their official capacity in Counts I - VI and VIII, and they share an identity of interest with the County.  The law treats the County employees as the same person as the County  for purposes of *res judicata*.

### b.      Whether the Same Causes of Action Are Involved

Defendants argue that seven of the eight causes of action asserted in *Konikov II* are the same as those asserted in *Konikov I.*  Docket 14 at 4.  Plaintiffs argue that *Konikov I* never litigated the issue of the County employees' allegedly false statements, and that the issue of false statements raised in *Konikov II* is not identical to the prior proceeding.  Docket 20 at 11 n.1.[1]   Plaintiffs also argue that

---

[1] Although Plaintiffs raise this argument in response to Defendants' collateral estoppel argument, the argument appears applicable to the res judicata issue as well.

the Court has never determined the damages caused by the County employees' untrue statements to the Code Enforcement Board.  Docket 20 at 15 n.3.

The Court has reviewed the complaints in *Konikov I* and *Konikov II*, and has examined the factual issues alleged in the complaints.  The facts in *Konikov I* can be summarized as follows.  On March 9, 2001, Code Enforcement Officer George LaPorte issued a Code Notice Violation, citing violation of Orange County Ordinance §§ 38-3, 38-74, and 38-77.  Docket 14-2 at ¶¶ 32, 33.  The basis for the citation was that Rabbi Konikov was operating a synagogue in a residential zoned area.  *Id*. at ¶ 34.  On February 4, 2002, Code Enforcement Officer Edward Caneda issued a Code Notice Violation, citing violation of Orange County Ordinance §§ 38-3, 38-74, and 38-77.  *Id*. at ¶¶ 32, 33.  The basis for the citation was that Rabbi Konikov was operating a religious organization from a residential property without special exemption approval.  *Id*.

On March 20, 2002, at a meeting of the Orange County Enforcement Board, the County found Rabbi Konikov in violation of Orange County Ordinance §§ 38-3, 38-74, and 38-77 because he was operating a religious organization from a residential property without special exemption approval and determined to enforce the Ordinance.  *Id*.  at ¶¶ 44-46, 61.  Defendants took this action with knowledge of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq. ("RLUIPA") and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.03, et seq. *Id*. at ¶62.  Rabbi Konikov alleged that the County failed to properly supervise and train defendants Joel Hammock, Jim Powers, Robert Burns, and Robert High, who were the individuals that decided to enforce the Ordinance.  *Id*. at ¶¶ 61-67, 95.

In *Konikov II*, Plaintiffs repeat the same factual allegations regarding the citations issued by LaPorte and Caneda, as well as the County's decision to enforce the Ordinance.  Docket 2, ¶¶ 20-22,

26-27, 29-30.   The complaint in *Konikov II* adds an allegation —  that the County issued a third citation on February 4, 2004, at the direction of Melvin Pittman.   Docket 2, ¶ 53.   The County allegedly issued this third citation following a conference and agreement by the defendant County employees even though they lacked knowledge regarding the number of times people visited the Konikovs' home for religious activities.   *Id*. at ¶ 54-55.

The complaint in *Konikov II* also embellishes upon the allegations related to the first citation issued on March 9, 2001.   The complaint alleges that the County issued the citation at Caneda's direction and after a conference and agreement by the defendant County employees.   *Id*. at ¶ 56.   The complaint also embellishes upon the evidence presented to the Orange County Enforcement Board on March 20, 2002.   Specifically, the complaint alleges that the Defendants knew that the evidence presented was incompetent and insubstantial.   *Id*. at ¶ 58.   Lastly, the complaint alleges that the Defendants intentionally discriminated against the Konikovs based on their religious activities, and that the Konikovs have suffered damages.   *Id.* at ¶ 75-76.

The Konikovs' claims regarding the County's February 4, 2002 citation and regarding the insufficiency of the evidence presented to the County's Enforcement Board are not new.   The facts existed at the time Konikov filed his complaint in *Konikov I.*   They do not constitute new claims.   The allegations clearly relate to the appropriateness of the County's decision on March 20, 2002, to enforce the Code.   Konikov was obligated to raise these arguments in *Konikov I* if he wished to pursue upon them.

Similarly, Plaintiffs now allege [Count VIII] that the County was negligent in supervising its employees in the issuance of the citations —  negligence alleged to have taken place prior to the filing of *Konikov I.*   As stated above, *res judicata* bars not only to the precise legal theory presented in the

previous litigation, but all claims that could have been asserted based on the same operative nucleus of facts. In *Konikov I*, Konikov alleged the County was negligent in its supervision of the named defendants in that action. The alleged negligent supervision in *Konikov II*, however, relates to acts of employees in issuing citations and presenting evidence to the Code Enforcement Board. Although different individuals are now alleged to have been negligently supervised, the allegations arise from the same nucleus of facts as in *Konikov I*. Plaintiffs' negligent supervision claims, therefore, are barred in this action.

*Konikov II* alleges a deprivation of rights based on the Ordinance and the County's enforcement of the Ordinance, and presents the same claims that were finally adjudicated on their merits in *Konikov I*. As to the County and County employees acting officially, the Konikov's complaint is barred in its entirety by the doctrine of *res judicata*.

### 2.      Collateral Estoppel Based on *Konikov I*

In the alternative, Defendants argue that collateral estoppel also bars Counts I - VI of *Konikov II*. Collateral estoppel or issue preclusion attaches when a subsequent litigation arises from a different cause of action. *Christo*, 223 F.3d at 1338. The prior judgment bars litigation only of those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first. *Christo*, 223 F.3d at 1338 n.46. In order for collateral estoppel to apply, the following four elements must be satisfied: 1.) the issue at stake must be identical to the one involved in the prior litigation; 2.) that issue must have been actually litigated in the prior litigation; 3.) the determination of the issue in the prior litigation must have been necessary and essential to the judgment; and 4.) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate

the issue in the prior proceeding.  *Pleming*, 142 F.3d at 1359; *Int'l Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125 (5th Cir. 1975).

Collateral estoppel or issue preclusion applies to jurisdictional issues, as well as to other issues.  *See N. Ga. Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 432 - 433 (11th Cir. 1993); *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *Ogala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.,* 722 F.2d 1407 (8th Cir.  1984).   Collateral estoppel precludes a plaintiff from relitigating the same jurisdictional question after the first suit was dismissed for lack of federal jurisdiction  —  even though dismissal did not adjudicate the merits of the case.  *See N. Ga. Elec. Membership Corp.*, 989 F.2d at 432 - 433; *Baris*, 74 F.3d at 571.

In *North Georgia Electric Membership Corporation*, the Eleventh Circuit stated:

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

989 F.2d at 432 - 433 (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.  1980)); *see also Cutler v.  Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987) (standing may not be relitigated); RESTATEMENT (SECOND) OF JUDGMENTS § 20, cmt. b illus. 1 (1982) (valid final judgment for lack of jurisdiction or improper venue does not bar relitigation of the claim, but does bar relitigation of the issues actually litigated).  C. Wright, A. Miller, and E. Copper  agree:

> Civil Rule 41 (b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits.  This provision means only that the dismissal permits a second action on the same claim that corrects the deficiency found in the first action.  The judgment remains effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal.

18 Wright, Miller, and Cooper, FEDERAL PRACTICE AND PROCEDURE, § 4436 at 338 - 39 (footnotes omitted).

Defendants are correct that collateral estoppel precludes Counts I - VI to the extent Plaintiffs raise the exact sames issues here as in *Konikov I*. Defendants, however, have failed to establish that the allegedly new issues based on alleged false statements, which are incorporated by reference into Counts I-IV, are identical to the issues adjudicated in *Konikov I*. The Court, therefore, cannot dismiss Counts I-VI in their entirety based on collateral estoppel.[2]

## B.   CIVIL CONSPIRACY CLAIM AGAINST ORANGE COUNTY EMPLOYEES ACTING INDIVIDUALLY [COUNT VII]

### 1.   Shotgun Pleading Unhelpful

Whether the adjudication in *Konikov I* bars Plaintiffs' civil conspiracy claim [Count VII] against the individual County employees in *Konikov II* depends on the capacity in which the employees are sued. The Konikovs have complicated this Court's task by filing a "shotgun" complaint.[3] Significantly, Plaintiffs' pro se complaint fails to specify which causes of action they

---

[2] Defendants make no collateral estoppel argument as to Count VII (Civil Conspiracy). Collateral estoppel, however, may bar claims against Caneda and Laporte, who were specifically identified in *Konikov I*. To the extent the district court in *Konikov I* "found no evidence of arbitrary *or discriminatory* enforcement in rejecting Konikov's due process argument based on lack of enforcement standards," this ruling may dispose of any allegation of discrimination by these two individuals in *Konikov II*. *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1330 (11th Cir. 2005) (emphasis added).

[3] The United States Court of Appeals for the Eleventh Circuit has described a "shotgun pleading" as one in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). According to the Eleventh Circuit, shotgun pleadings "impede[] the due administration of justice and, in a very real sense, amount[] to obstruction of justice," *Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001)), and "exact an intolerable toll on the trial court's docket," *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997). In *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002), the Court describes a typical shotgun complaint as one that "contains several counts, each one incorporating by reference the allegations of all of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous."

assert against the County employees in their individual capacity.  Rather, the complaint seems to intentionally blur the distinction by alleging that each individual County employee "was at certain times relevant herein acting in his official capacity and within the course and scope of his authority and under color of state law [and at other times] acting in his individual capacity."  *See e.g.*, Docket No. 2 at 4.  The complaint, however, never specifies events or times when defendants acted individually.  From an examination of all relevant language in the complaint, it appears that only Count VII for civil conspiracy actually seeks recovery from the County employees in their individual capacity.  See Docket 2 at ¶ 195.

> ### 2. *Konikov I* Claims Repackaged as a Civil Conspiracy by Lesser County Officials

In *Konikov I*, Joseph Konikov sued members of the Orange County Enforcement Board in their individual capacities because the Board enforced the Ordinance against him.  Konikov lost.  Plaintiffs now sue lesser Orange County officials — the code enforcement officers or investigators — in their individual capacities for recommending the Board action to enforce the Ordinance.  Plaintiffs' label Count VII a civil conspiracy to violate Plaintiffs' rights under the U.S. Constitution, Florida Constitution, 42 U.S.C. §§ 1983, 1985, RLUIPA, and the Religious Freedom Restoration Act of 1998 (Fla. Stat. § 761.01) ["RFRA"], "and all statutes, ordinances, and other county, state and federal laws."  Docket 2 at ¶ 195.  Plaintiffs' claim appears to merely repackage Plaintiff's *Konikov I* claims against new, but lower level County employees who could have been included in the first action.

> ### 3. The Legal Basis for Count VII is Unclear

The legal basis for the civil conspiracy claim in Count VII is unclear.  Defendants interpret Count VII as being based on state law.  Docket 14 at 2.  Even if Plaintiffs were to cite some basis

under Florida law for such a civil conspiracy, the basis for federal subject matter jurisdiction over a single Florida-law claim remains unclear.  Count VII of the complaint, however, also specifically alleges a conspiracy based on Federal law — under the U.S. Constitution, 42 U.S.C. §§ 1983, 1985, and RLUIPA.   Docket 2 at ¶¶ 195, 196, 198.

The shotgun pleading forces this Court to guess as to the legal basis intended for Count VII. In *Bivins v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court recognized that an individual could bring an action directly under the Constitution against *federal* officials who, while acting under color of federal law, violate an individual's constitutional rights. Plaintiffs, however, do not allege that defendants are federal officials.  Moreover, a *Bivins*-type action is inappropriate if Congress provides an adequate alternative remedial scheme which is intended to substitute for direct recovery under the Constitution. *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982).

An examination of the federal statutes identified in Count VII demonstrates that Plaintiffs cannot sue the County employees directly under the Constitution.  Congress enacted 42 U.S.C § 1983, which provides in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Counties and municipalities are "persons" subject to liability under § 1983 where it is established that an official policy or custom causes a constitutional tort. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978).  County officials also may be sued for damages in both their

official and individual capacities.  *See, e.g., Gonzalez v. Lee County Housing Auth.*,161 F.3d 1290, 1292 (11th Cir. 1998).  As stated above, res judicata bars an official capacity claim in this case, but does not bar Plaintiffs from pursuing individual claims.

Count VII also purports to rely on 42 U.S.C. § 1985.  Section 1985 (3) provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985 (3)'s protection is more narrow than that afforded by Section 1983.  The language of Section 1985 (3), which requires an intent to deprive one of equal protection or equal privileges and immunities, "means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action."  *Byrd v. Clark*, 783 F.2d 1002, 1007-08 (11th Cir.1986).

To establish a cause of action under § 1985 (3), the plaintiff must show the following elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir.2001).  Additionally, a § 1985 (3) claim requires "proof of invidious discriminatory intent" on the part of the defendants.  *Trawinski v. United Techs.*, 313 F.3d

-15-

1295, 1299 (11th Cir.2002).  Plaintiffs' complaint falls short of stating a claim pursuant to Section

1985 (3).  Plaintiffs identify no class-based discriminatory animus.

RLUIPA prohibits a government from imposing or implementing a land use regulation in a

manner that imposes a substantial burden on the religious exercise of a person, unless there is a

compelling government interest and the regulation is the least restrictive means of furthering that

compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).  RLUIPA also prohibits a government

from imposing or implementing a land use regulation in a manner that treats a religious assembly or

institution on less than equal terms with a nonreligious assembly or institution, or from discriminating

against any assembly or institution on the basis of religion or religious denomination.  42 U.S.C.

§ 2000cc(b).

RLUIPA, however, does not by itself provide a cause of action for conspiracy.  Cases that have

addressed a conspiracy claim based on RLUIPA were pleaded pursuant to §§ 1983 or 1985 (3).  *See,*

*e.g., Mark v. Gustafson*, --- F. Supp. 2d ----, 2006 WL 2540772 *7 (W.D. Wis. August 30, 2006);

*Orafan v. Goord*, 411 F. Supp. 2d 153, (N.D.N.Y. 2006).  The Court, therefore, finds that a civil

conspiracy cannot be pleaded directly under RLUIPA, but must be brought pursuant to § 1983 or

§ 1985.

Florida RFRA provides that the "government may substantially burden a person's exercise

of religion only if it demonstrates that application of the burden to the person: (a) [i]s in furtherance

of a compelling governmental interest; and (b) [i]s the least restrictive means of furthering that

compelling governmental interest." Fla. Stat. § 761.03(1).   In *Konikov I*, Judge Antoon ruled that

Plaintiff did not establish a claim under these standards.  *Konikov v. Orange County, Fla.,* 302 F.

Supp. 2d 1328, 1346 (M.D. Fla. 2004).  The Eleventh Circuit affirmed Judge Antoon's ruling on this

-16-

matter.  *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1319 (11th Cir. 2005) ("We sustain [plaintiff's] RLUIPA and his due process challenges to the ordinance. We affirm the district court's disposition of all other claims, with the following exception: We do not reach Konikov's equal protection, free exercise, freedom of speech, and freedom of assembly claims to the extent that these constitutional claims rely on the same theories underlying the claims dismissed by the district court and reversed in this opinion, because full relief is available under the statute."). Although Defendants do not argue collateral estoppel as to Count VII, the Court finds that collateral estoppel applies to Count VII to the extent it is based on RFRA.

To the extent Count VII is based on the Florida Constitution and "all statutes, ordinances, and other county, state and federal laws," the complaint is grossly overbroad, and fails to give Defendants notice of the basis of Plaintiffs' claim. Count VII cannot stand because it demands damages against individuals for conspiring to violate every county ordinance, Florida statute, and Federal law in existence.

### 4.      Count VII States a Claim Under § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir.1985).

A conspiracy to violate constitutional rights states a claim under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff additionally must demonstrate that the defendants "'reached an understanding' to violate [his] rights." *Rowe*, 279

F.3d at 1283 (citations omitted).  An agreement alone does not state a cause of action for conspiracy; the plaintiff must further allege an actual denial of his protected rights before a cause of action is stated.  *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960).

Defendants argue that Plaintiffs' complaint fails to state a claim because the allegations are conclusory and vague, and there are no facts that would establish each of the (state law) elements of the cause of action.  The law remains unsettled as to whether to require a heightened pleading standard for civil conspiracy claims where such claims are not included among those claims requiring special pleading by Fed. R. Civ. P. 9.  *See, Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir.1984) ("[i]n civil rights and conspiracy actions, . . . more than mere conclusory notice pleading is required"); *but c.f., North Jackson Pharmacy, Inc. v. Express Scripts Inc.*, 345 F. Supp. 2d 1279, 1287 (N.D. Ala. 2004) (United States Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002), calls into question the continuing validity of a heightened pleading requirement for civil conspiracy claims).[4]

Even applying a heightened pleading standard, Plaintiffs' Count VII sets forth sufficient facts to survive a motion to dismiss for failure to state a claim under § 1983.  Count VII incorporates by reference paragraphs 1 - 80 of the complaint.  Docket 2 at ¶ 194.  Plaintiffs allege that Pittman, Caneda, LaPorte, Scott and Spivey, acting under color of state law, entered into an agreement (complaint ¶¶ 10-14, 54-55, 196); the agreement was to enforce the Code against Plaintiffs despite lacking knowledge of the number of visitors to Plaintiffs' home for the purpose of religious activities (complaint ¶¶ 55, 59); the alleged conspirators intended to discriminate and deprive Plaintiffs of their

---

[4] In *Swierkiewicz,* the Supreme Court ruled that heightened pleading standards did not apply to civil rights cases, and a plaintiff alleging employment discrimination did not need to plead specific facts establishing a prima facie case. *Swierkiewicz,* 534 U.S. at 513-14.

constitutional and statutory rights to engage in religious activities in a private home (complaint ¶¶ 74, 75, 77); the conspirators engaged in overt acts by issuing Notices of Violation and by presenting false affidavits to the Code Enforcement Board (complaint ¶¶ 43-53, 57-58); and that Plaintiffs suffered damages as a result of these actions (complaint ¶¶ 70, 76).  These allegations satisfy the pleading requirements for a conspiracy under §1983.

### 5.    Qualified Immunity for County Employees

Defendants argue that the County employees have qualified immunity because they were government officials performing discretionary functions, and their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants' primary argument is that the legal norms allegedly violated were not clearly established at the time of the challenged action, as shown by the district court's granting of summary judgment to Defendants in *Konikov I* and the ultimate reversal and remand as to portions of that decision by the Court of Appeal.  As to the alleged violation of Plaintiffs' rights under RLUIPA and Fla. Stat. § 761.03, et seq., Defendants are correct that the legal norms allegedly violated were not clearly established at the time the County employees acted.  To the extent that Count VII relies upon violation of RLUIPA or RFRA, the County employees are entitled to qualified immunity.

Defendants' argument, however, ignores Plaintiffs' added allegation that Defendants submitted false affidavits in support of their efforts to enforce the Orange County Code.  See Docket 2 at ¶¶ 42-57.  Plaintiffs allege that the County employees "with the purpose and intent of willfully and knowingly conspiring to discriminate against Plaintiffs and deprive Plaintiffs of rights guaranteed by the United States and Florida Constitutions . . . did order the Plaintiffs to cease and desist their

religious activities."   Docket 2 at ¶ 75.   The rights allegedly violated were Plaintiffs' right "to

participate in religious worship and related religious activities in a private home."   Docket 2 at ¶ 74.

The law is well established that a governmental investigation that is designed to chill

constitutionally protected activity violates an individual's constitutional rights. *See, e.g., White v. Lee*,

227 F.3d 1214, 1228 (9th Cir. 2000).   Additionally, the law is well established in the criminal context

that a defendant's constitutional right to due process is violated when the government knowingly

presents false evidence against the defendant, and there is a reasonable likelihood that the false

evidence will affect the decision of a trier of fact.   *See e.g., U.S. v. Barham*, 595 F.2d 231, 232 (5th

Cir. 1979).

Given the state of the law at the time, the County employees were undoubtedly aware that they

would be violating Plaintiffs' constitutional rights if they were to present false testimony to the

Orange County Code Enforcement Board.   As aptly stated by the Ninth Circuit,

> [T]he fact that Defendants had the lawful authority to initiate an
> investigation and testify before the city council in response to
> Plaintiffs' complaints does not entitle Defendants to qualified
> immunity regarding the extent of the investigation and the manner in
> which it was conducted. According to the complaint, Defendants
> knowingly gave false testimony and intentionally defamed Plaintiffs
> before the city council and specifically intended to obstruct or
> undermine Plaintiffs' ability to seek redress of their grievances and to
> intimidate Plaintiffs from filing future complaints. Assuming the truth
> of these allegations, Defendants are not entitled to qualified immunity,
> which protects "all but the plainly incompetent or those who
> knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106
> S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*David v. Baker*, 2005 WL 851284 (9th Cir. April 14, 2005).

In addition to the false testimony allegations, the Complaint also appears to allege religious

discrimination.   Although neither side briefs the issue, the law was well established at the time of the

County employees' actions that discrimination on the basis of religion violates an individual's constitutional rights.

As Defendants recognize, qualified immunity is typically addressed at the summary judgment stage of the case.  Docket 14 at 14.  The Court finds that Plaintiffs' allegations are sufficient to withstand Defendant's Rule 12 (b)(6) motion to dismiss as to the § 1983 claim.  As Defendants present no evidence that would support a finding of qualified immunity, Defendants' alternate motion for summary judgment should be denied without prejudice.

## III.   CONCLUSION

For the reasons stated above, all claims brought against the County are barred by the doctrine of *res judicata*.  Further, all claims made against the County employees in their official capacity are deemed to be claims asserted solely against the County.  They also are barred by *res judicata*.  Collateral estoppel bars Count VII of the complaint to the extent it claims a conspiracy to violate RFRA.

Count VII is the only claim identifiable as a claim against the County employees in their individual capacities.  Count VII states a claim under 42 U.S.C. §1983.  Count VII claims that five individuals, acting under color of state law as County employees, conspired to discriminate against the Konikovs so as to deprive them of a right protected by the U.S. Constitution — the right to engage in religious activities at home.  Assuming the facts of the complaint to be true, and except to the limited extent stated above regarding RLUIPA and RFRA, the qualified immunity defense does not apply.  Count VII, however, requires repleading consistent with this report and recommendation.

It is therefore **RECOMMENDED** that Defendants' Motion to Dismiss the Amended Complaint with Prejudice or Motion for Summary Judgment [Docket No. 14] filed August 18, 2006 be **GRANTED in part and DENIED in part** as follows:

1.     Defendants' motion to dismiss with prejudice all claims against Orange County and against County employees acting in their official capacity (Counts I - VI and VIII) should be **GRANTED** on the grounds of *res judicata*;

2.     Defendants' motion to dismiss Count VII  —  the sole claim against the County employees acting in their individual capacities  —  should be **GRANTED** without prejudice to Plaintiffs' right to file an amended complaint claiming a civil conspiracy under 42 U.S.C. § 1983 that is not inconsistent with this report and recommendation; and

3.     Defendants' alternative motion for summary judgment should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 1, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished electronically to:

The Honorable John Antoon, II
Counsel of Record